IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FOROOGH EHTESHAMI,

    Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner for Operations, performing duties and functions not reserved to the Commissioner of Social Security,

    Defendant.

No. C 17-05283 WHA

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this social security action, plaintiff appeals her denial of disability benefits. For the reasons below, defendant's motion for summary judgment is **GRANTED.** Plaintiff's motion for summary judgment is **DENIED**.

## STATEMENT

**1. PROCEDURAL HISTORY.**

Plaintiff Foroogh Ehteshami first applied for disability benefits in 2013. In September 2016, ALJ John J. Flanagan found that plaintiff was not disabled notwithstanding the persistence of her disabilities, especially her primary alleged disability of a mood disorder (AR 14). Specifically, the ALJ concluded that plaintiff could perform light, repetitive work that involved limited social contact (AR 28–31). Plaintiff requested district court review of the

decision and now asserts that she is either entitled to disability benefits or, in the event that such a finding cannot be made, that she is entitled to a reversal and a remand for further administrative proceedings. Plaintiff filed the instant action in September 2017 seeking judicial review pursuant to Section 405(g) of Title 42 of the United States Code. The parties now cross-move for summary judgment.

**2.     MEDICAL EVIDENCE.**

The ALJ summarized the medical evidence in his decision (AR 24–29). This order will also briefly review the plaintiff's self-reported symptoms and the findings of each physician who examined her.

**A.     Self-Reported Symptoms.**

Plaintiff reported symptoms including depression; irrational anger and irritability, the latter most acutely manifested in marital strife; insomnia; chronic fatigue; anxiety; inability to communicate with others; continued hearing impairment; blurry vision; shoulder and knee pain; abnormally cold hands; and mild paranasal sinus disease (AR 65–67, 70–72, 431–32, 434, 758–59, 806, 816).

**B.     Kimberly Loda, M.D.**

Dr. Loda was plaintiff's treating psychiatrist from September 2014 through the time of the ALJ's hearing on plaintiff's disability claim. Dr. Loda reported that she was surprised plaintiff had been able to perform a part-time retail job due to plaintiff's difficulty with interpersonal interaction. Full-time work, Dr. Loda opined, was not advisable, as she feared the increased stress of full-time work would cause plaintiff to decompensate (AR 905).

**C.     Soheila Fanaee, M.D.**

Dr. Fanaee was plaintiff's treating therapist from January 2015 through the time of the ALJ's hearing on plaintiff's disability claim. The purpose of their sessions was to address issues of mood, self-esteem, and independence (AR 881–83, 902). Plaintiff wanted to take on full-time work and improve her life, Dr. Fanaee recorded, but Dr. Fanaee opined that plaintiff would be unable to handle the stress of full-time work. Similar to Dr. Loda, Dr. Fanaee

expressed surprise that plaintiff had been able to maintain her part-time retail job, given her difficulty with social interaction (AR 903).

### D. Carol N. Arpaci, Psy.D.

Dr. Arpaci examined plaintiff in September 2013. She diagnosed plaintiff with a mood disorder and assessed limited impairment with complex tasks, in maintaining adequate attention, in adaptation or concentration, and with managing her stress. Plaintiff's speech was intelligible and Dr. Arpaci found plaintiff essentially cognitively unimpaired (AR 566–68). Dr. Arpaci accordingly opined that if plaintiff could continue with treatment and accommodation of her hearing problems, she would likely be able to function in a low-stress workplace (AR 567).

### E. Wade R. Cartwright, M.D.

Dr. Cartwright examined plaintiff's hearing in August 2013. Dr. Cartwright opined that plaintiff's speech was very intelligible, assessed that plaintiff had sensory neural hearing loss in both ears, and recommended that she continue using hearing aids in both ears (AR 559).

### F. Holly Stewart, M.D.

Dr. Stewart was plaintiff's treating doctor from March 2013 to mid-2014 and opined that plaintiff's symptoms were consistent with a mixed bipolar disorder (AR 592, 905). Dr. Stewart opined that much of plaintiff's emotional difficulty, especially in plaintiff's personal life, was related to her childhood trauma. Plaintiff experienced improved sleep after halving her dose of Seroquel, a medication plaintiff had been taking to manage her mood disorder (AR 597). Notwithstanding plaintiff's continued sleep and mood improvement on Seroquel, plaintiff later asked Dr. Stewart if she could stop taking Seroquel in favor of another medication, Depakote (AR 599).

### G. Dr. Kevin Santulli, Ph.D.

Dr. Santulli determined in July 2013 that plaintiff had moderate difficulty in social functioning and concentration due to her affective and anxiety disorders (AR 93) — he accordingly asserted that plaintiff was capable of conducting simple, repetitive work where interpersonal contact was limited and only incidental to work performed (AR 97).

3

### H. Dr. Charles Friedman, M.D.

In October 2013, Dr. Friedman examined plaintiff and determined that plaintiff did not have any exertional limitations but could not engage in work that required excellent hearing (AR 94).

### I. Non-Examining Consultants.

Agency specialists Phaedra Caruso-Radin, Psy.D. and Maria Rehrig, M.D. reviewed the medical evidence in 2014 and reaffirmed the conclusions of Drs. Arpaci and Santulli that plaintiff could undertake light, repetitive work that did not require excellent hearing (AR 124–29).

### 3. TESTIMONY AT THE ADMINISTRATIVE HEARING.

When asked whether she felt she could undertake full-time work, plaintiff testified she felt she could not because she was very sensitive and often preoccupied by how others perceive her (AR 65). She asserted that anticipating interpersonal conflict while working full-time would be very stressful (AR 67). Her sensitivity and resulting anger, plaintiff testified, had not been mitigated by medication (AR 70). Plaintiff asserted that she had suffered from such emotional instability for fifteen to twenty years (AR 69). Plaintiff also testified that she felt depressed most of the time (AR 72). She further testified that she was attending swimming, math, and computer logic college classes and concurrently working part-time at TJ Maxx and Marshalls — she attended college classes four days per week and worked one day per week (AR 55–56, 73–74). She estimated that she was in college classes twelve to fifteen hours per week (AR 77) and worked in retail for four hours per week (AR 55). In 2015, she worked for eight months as an order puller at Amazon, where she earned just under the threshold for substantial gainful activity (AR 53).

A vocational expert, Dr. John Kumar, testified that there are numerous jobs in the national economy involving simple, repetitive tasks, little independent judgment, and limited contact with others (AR 80–81). Dr. Kumar also testified that plaintiff had undertaken substantial gainful activity as a medical assistant before she applied for disability benefits and

4

had undertaken a six-month period of close to substantial gainful activity as an Amazon order puller in 2015 (AR 78).

**ANALYSIS**

**1.  LEGAL STANDARD.**

The Deputy Commissioner's decision regarding plaintiff's disability benefits must be upheld if it is supported by substantial evidence and is free from legal error. *See, e.g.*, *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). If a treating doctor's conclusion is contradicted by another doctor, a fact-finder can only reject the treating doctor's conclusion by providing "specific and legitimate reasons supported by substantial evidence in the record." *See Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). The ALJ can meet the latter burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The opinions of non-treating or non-examining physicians can also constitute substantial evidence when the opinions are consistent with other evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Where the evidence is susceptible to more than one rational conclusion, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld. *See id.* at 954.

ALJs review requests for disability benefits under a five-part framework mandated by the Social Security Act. 20 C.F.R. § 404.1520. The claimant has the burden of proving disability. *Andrews*, 53 F.3d at 1040. In the first four steps of evaluating a claimant's application, the ALJ must determine: (i) whether the claimant is working; (ii) the medical severity and duration of the claimant's impairment; (iii) whether the disability meets any of those listed in Appendix 1, Subpart P, Regulations No. 4, and (iv) whether the claimant is capable of performing his or her previous job. Step five includes an inquiry into whether claimant has the ability to do any kind of work, considering the claimant's age, education, work experience, and the claimant's ability to work on a sustained basis notwithstanding her impairments (AR 19). If the claimant demonstrates she is unable to perform past relevant work, the ALJ bears the burden of proof in making a conclusion at step five. *Andrews*, 53 F.3d at

5

1040. If the ALJ finds the claimant able to undertake any kind of work, she is not disabled within the meaning of the Social Security Act.

### 2. THE ALJ'S FIVE-STEP ANALYSIS.

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since April 26, 2013, the alleged onset date of her disability. She had engaged in substantial gainful activity until 2012 (AR 19–20).

At step two, the ALJ found that plaintiff lived with a severe impairment, specifically an affective mood disorder (AR 20).

At step three, the ALJ found that none of plaintiff's impairments or combination of plaintiff's impairments met or medically equaled any impairment that would mandate a finding of disability without considering her age, education, or work experience (AR 18).

In between steps three and four, the ALJ determined plaintiff's residual functional capacity. The ALJ found plaintiff had the residual capacity to perform "a full range of work," with the caveats that this work should involve few changes, little independent judgment, and limited contact with others. Specifically, the ALJ found that while plaintiff's medically determinable impairments could be expected to cause her alleged symptoms, the alleged severity and limiting effects of plaintiff's physical impairments, including her hearing impairment, chronic shoulder pain, and dry nasal passages, were not consistent with medical evidence or with the record. The ALJ similarly found that neither the record nor the medical evidence indicated that plaintiff's alleged psychological impairments were as severe or limiting as she claimed, though her psychological impairments were explained to some extent by her medically determinable impairments (AR 23).

At step four, the ALJ found plaintiff unable to perform any past relevant work. A vocational expert testified that plaintiff's past work as a medical assistant, which constituted substantial gainful activity, required a level of skill that exceeded plaintiff's current residual functional capacity. Her past work as an order puller and retail associate did not constitute substantial gainful activity and therefore was not considered past relevant work (AR 29).

1    At step five, the ALJ found that there was other full-time work for plaintiff considering
2 her residual functional capacity, age, and experience. A vocational expert testified that there
3 were many thousands of opportunities for plaintiff to pursue full-time unskilled labor that
4 comported with her disability-based needs (AR 30). The ALJ thus found plaintiff not disabled
5 within the meaning of the Social Security Act.

### 3. THE ALJ DID NOT ERR IN HIS EVALUATION OF THE EVIDENCE.

Plaintiff alleges that the ALJ applied his "lay opinion" in lieu of that of a medical professional in order to deny plaintiff benefits — such an assertion is not supported by the administrative record. Specifically, plaintiff asserts that the ALJ did not have the requisite specific and legitimate reasons to reject Dr. Loda's opinion. Notwithstanding Dr. Loda's conclusion that plaintiff was disabled and that full-time work would cause her to "decompensate," the ALJ referenced plaintiff's previous record of undertaking substantial gainful activity while alleging similar mental illness to substantiate his conclusion that plaintiff could actually work full-time completing simple, repetitive tasks involving little social contact. He also relied upon her concurrent record of attending class, completing course work and undertaking part-time employment to justify his conclusion (AR 27–28). Furthermore, Drs. Arpaci and Santulli as well as non-examining doctors determined that plaintiff was able to complete such work and was thus not disabled (AR 26–28). Though the ALJ did not explicitly say that the opinions of Drs. Loda and Fanaee were contradicted by the opinions of other medical professionals, it is clear from the record that some of plaintiff's examining doctors believed plaintiff capable of taking on full-time work. Furthermore, the opinions of those doctors who believed plaintiff capable of full-time work are consistent with the record, given that the record reveals that plaintiff has been able to maintain part-time employment in conjunction with attending college classes and completing corresponding course work (AR 28) — this constitutes substantial evidence. Finally, the ALJ added that while this was not dispositive in his decision to deny plaintiff benefits, plaintiff was alert and responsive during her testimony at the administrative hearing in a manner that did not comport with her alleged disability (AR 28).

7

The ALJ asserted and repeatedly explained that he believed, based on the above substantial evidence, plaintiff was able to work full time and therefore was not a disabled person under the criteria established under the Social Security Act. He summarized the conflicting evidence and stated his interpretation thereof. The ALJ thus used specific and legitimate reasoning supported by substantial evidence to come to his conclusion

**CONCLUSION**

For the foregoing reasons, the Deputy Commissioner's cross-motion for summary judgment is **GRANTED.** Plaintiff's motion for summary judgment is **DENIED**. Judgment will follow.

**IT IS SO ORDERED.**

Dated: July 17, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE